# AFFIDAVIT
## of
## JONATHAN D. LOGAN
## TASK FORCE OFFICER
## BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES

I, Jonathan D. Logan, being first duly sworn, do depose and state that:

1. I am a federally deputized Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) assigned to the Jefferson City, Missouri Office since August 2013. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a law enforcement officer for over twenty (20) years with the Columbia, Missouri Police Department.

2. While with the ATF, I have participated in firearm and drug trafficking investigations involving, among other crimes, the possession, manufacture and distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); the unlawful use of a communications device to commit and facilitate the commission of drug trafficking offenses, in violation of Title 21, United States Code, Section 843(b); drug trafficking conspiracies, in violation of Title 21, United State Code, Section 846; the possession of firearms by felons and other prohibited persons, in violation of Title 18, United States Code, Section 922(g); and the possession of firearms in furtherance of drug trafficking offenses and/or crimes of violence, in violation of Title 18, United States Code, Section 924(c).

3. This affidavit is based on my own personal knowledge as well as information provided to me by other law enforcement agencies and officers. This affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me

concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of the possession, manufacture and distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); the unlawful use of a communications device to commit and facilitate the commission of drug trafficking offenses, in violation of Title 21, United States Code, Section 843(b); drug trafficking conspiracies, in violation of Title 21, United State Code, Section 846; the possession of firearms by felons and other prohibited persons, in violation of Title 18, United States Code, Section 922(g); and the possession of firearms in furtherance of drug trafficking offenses and/or crimes of violence, in violation of Title 18, United States Code, Section 924(c) are located within a gold Apple iPhone, Model A1660, cellular telephone with a cracked screen, and a black Samsung, Model SM-B311V cellular telephone, MEID #A0000047718857 ("the Devices").

4. On February 6, 2018, at approximately 10:49 p.m., Columbia Street Crimes Detectives Brad Overton and Matt Gremore were in a marked patrol vehicle traveling north on Providence Road at Interstate 70 in the left lane (Columbia, Boone County, Missouri). Detective Gremore observed a gray 2005 Chevrolet Impala, Missouri registration AK0Z7P, in the right lane. As Detective Gremore approached the intersection he recognized the driver of the Impala was KYLE SHEPHERD. Detective Gremore was aware that SHEPHERD had a suspended driver's license, and conducted a traffic stop of the Impala at Providence Road and Vandiver Drive.

5. Detectives Gremore and Overton made contact with the occupants of the Impala, and confirmed that SHEPHERD was the driver. The front seat passenger was identified as SHAYANA McQUITTY. Detective Gremore arrested SHEPHERD for driving while suspended. While handcuffing SHEPHERD, Detective Gremore stated he smelled the odor of marijuana coming from the Impala, and Detective Overton also indicated he smelled the odor of marijuana

coming from the Impala. Detective Gremore searched SHEPHERD and located nothing of evidentiary value on of his person.

6. When Detective Overton made contact with McQUITTY and asked her to step out of the Impala, McQUITTY asked him why she needed to exit the car. Detective Overton told her that, because of the smell of marijuana coming from the Impala, she and the car were going to be searched. After McQUITTY told Detective Overton she had a firearm in her pocket, he seized a Glock 43, 9mm handgun, serial number BCZF138, loaded with one round of ammunition in the chamber and three rounds of ammunition in the magazine, from McQUITTY's front right pants pocket.

7. Detective Gremore conducted a search of the Impala, and discovered a plastic bag containing four individual plastic baggies of suspected marijuana wedged between the driver's seat and the center console, directly beside where SHEPHERD had been seated. Based on his training and experience, Detective Gremore was aware the marijuana was packaged for sale.

8. Detective Gremore also located a purse on the floorboard of the vehicle that contained contents belonging to McQUITTY, who had been holding this purse when first contacted by Detective Overton. Inside the purse, Detective Gremore found a Tylenol pill bottle that contained an assortment of pills, seven of which were identified as oxycodone, a Schedule II controlled substance. Upon further searching the Impala, Detective Gremore located what appeared to be small amounts of "crack" cocaine crumbs inside the center console of the car, which field-tested positive for cocaine.

9. Columbia Police Officer Jenny Hopper was summoned to the traffic stop location to search McQUITTY. Officer Hopper located a plastic baggie containing suspected "crack" cocaine concealed inside McQUITTY's bra. This substance field tested positive for cocaine and

weighed approximately 13.9 grams.

10. In McQUITTY's possession at the time of her arrest were two cellular telephones - a gold Apple iPhone, Model A1660 with a cracked screen, and a black Samsung, Model SM-B311V, MEID #A0000047718857 (the Devices). The Devices have been in possession of law enforcement since they were seized on February 6, 2018, and are currently stored at the Columbia Police Department, 600 East Walnut, Columbia, Missouri.

11. Based on my training and experience, I know that it is common for those engaged in the trafficking of controlled substances to use their mobile devices to communicate and record information associated with the offense. Based on the evidence seized during the arrest of McQUITTY, I believe that additional evidence proving McQUITTY distributes controlled substances while possessing firearms will be located in the Devices.

**Technical Terms**

12. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device;

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage

4

medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos;

        c.     Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock or games;

        d.     GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision;

        e.     IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static - that is, long-term - IP addresses, while other computers have dynamic - that is, frequently changed - IP addresses; and

        f.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

13. Based on my training and experience, I know that the Devices have the capability to serve as a wireless telephone, send and receive e-mail and text messages, take digital photos and videos, serve as a computer that stores data, including photos, videos and

messages, broadcast GPS navigation data, and access the internet through an IP address. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices, as well as evidence of participation in and commission of the crime being investigated.

**Electronic Storage and Forensic Analysis**

14. Based on my knowledge, training and experience, I know the Devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices. This information can sometimes be recovered with forensics tools.

15. Forensic evidence. As further described in Attachment A, I seek permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purposes of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file);

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence;

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when;

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to

6

understand other evidence also falls within the scope of the warrant; and

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## **Conclusion**

16. Based upon the foregoing, I assert that probable cause exists that a gold Apple iPhone, Model A1660, cellular telephone with a cracked screen, and a black Samsung, Model SM-B311V, cellular telephone, MEID #A0000047718857 (the Devices") contain evidence of violations of the possession, manufacture and distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); the unlawful use of a communications device to commit and facilitate the commission of drug trafficking offenses, in violation of Title 21, United States Code, Section 843(b); drug trafficking conspiracies, in violation of Title 21, United State Code, Section 846; the possession of firearms by felons and other prohibited persons, in violation of Title 18, United States Code, Section 922(g); and the possession of firearms in furtherance of drug trafficking offenses and/or crimes of violence, in violation of Title 18, United States Code, Section 924(c).

17. The facts set forth in this affidavit are true and correct to the best of my knowledge and belief.

  Further, Affiant sayeth not.

_____
**Jonathan D. Logan**
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms & Explosives

SWORN TO and subscribed before me on this 4th day of February, 2019.

_____
**Willie J. Epps, Jr.**
United States Magistrate Judge

7